UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STAR HOLLOMAN | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:24-cv-08371 |
| | ) | |
| v. | ) | |
| | ) | |
| KINDERCARE EDUCATION, LLC | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| LIBERTYVILLE SCHOOL DISTRICT 70 | | |
| Defendants. | | |

## COMPLAINT

**NOW COMES** Star Holloman ("Plaintiff"), by and through the undersigned counsel, complaining of Kindercare Education, LLC and Libertyville School District 70 (collectively "Defendants"), and in support states as follows:

### NATURE OF PLAINTIFF'S CLAIMS

1. Plaintiff brings this action seeking redress under the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII') seeking redress for Defendants race-based discrimination, race-based harassment, and retaliation under §1981 and Title VII.

### JURISDICTION AND VENUE

2. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as Title VII and Section 1981 are federal statutes.

3. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) as a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## ADMINISTRATIVE PREREQUISITES

4. All conditions precedent for Title VII and Section 1981 have been fulfilled or been complied with.

5. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against each respective Defendant. *See* attached Exhibits A and B.

6. Plaintiff received a Notice of Right to Sue from the EEOC as to each respective charge. *See* attached Exhibits C and D.

7. This Complaint has been filed within ninety (90) days of the receipt of both of the EEOC's Dismissal and Notice of Right to Sue.

## PARTIES

8. Plaintiff is a natural person, over 18-years-of-age, who at all times relevant resided in Round Lake Beach, Illinois.

9. Defendant Kindercare Education, LLC ("Kindercare") is a company that is an American operator of for-profit child care and early childhood education facilities.

10. Defendant Kindercare has operations and does business in Lake County, Illinois.

11. Defendant Libertyville School District 70 ("the School District") is a company that is an American operator of for-profit child care and early childhood education facilities.

12. The School District is a public school district which includes four elementary schools and one middle school in Libertyville, in Lake County, Illinois.

13. Plaintiff was jointly employed by Defendants as an "employee" within the meaning of 42 U.S.C §2000e(f).

14. During the applicable limitations period, Defendants had at least fifteen employees, have been an "employer" as defined by Title VII, and have been engaged in an industry affecting

commerce within the meaning of Title VII, 42 U.S.C. §2000e(b).

15. At all relevant times, Defendants have continuously been under contract for services rendered in Illinois, and have continuously been a joint employer in which all Defendants generally controlled the terms and conditions of the employment of Plaintiff.

## FACTUAL ALLEGATIONS

16. Plaintiff was employed by Kindercare as a Site Director in or around September 2018 and was assigned to work at Alder Park School, a school in Libertyville School District 70, and was employed in this capacity until she was constructively discharge in or around October 2023.

17. Plaintiff is a member of a protected class due to her race, African American.

18. Plaintiff met or exceeded Defendant's performance expectations during the entire duration of her employment.

19. Defendant subjected Plaintiff to different terms and conditions of employment than others not within her protected class (non-African Americans) in violation of Title VII and Section 1981.

20. Kindercare maintained control and supervision over Plaintiff because Kindercare vetted Plaintiff for the specific skills and experience that the School District needed to fill a crucial internal role at its Alder Park School location.

21. Kindercare provided the costs of operation and maintained business connections with the School District to obtain Plaintiff her employment with Defendant School District.

22. Beginning on or around September 13, 2023, Plaintiff began to experience severe and humiliating treatment from Defendants on account of her race.

23. On or around September 13, 2023, Plaintiff attempted to enter the school's art

classroom when she was physically blocked from doing so by Defendants' employee, Ms. Alisha Fyther (Causasian).

24. Plaintiff, confused, tried to bring her students into the art room for their scheduled art class, and Ms. Fyther yelled at Plaintiff to "not come in" to the art room.

25. This outburst was completely unprovoked and Plaintiff soon realized that Ms. Fyther was preventing Plaintiff from entering her classroom solely on the basis of her protected class status (African American).

26. Plaintiff attempted to brush off the hurtful encounter and brought her students to the gym for their schedule P.E. class.

27. To Plaintiff's surprise, a police officer had been called to the school and began to closely watch Plaintiff.

28. It soon became apparent to Plaintiff that Ms. Fyther had called the police on Plaintiff purportedly on the basis of her race.

29. Defendants' employee's actions in calling local authorities despite no violence on the part of Plaintiff demonstrates the school's clear culture of race discrimination to the detriment of Plaintiff.

30. Immediately, Plaintiff engaged in protected activity to report Ms. Fyther's racist conduct.

31. On or around September 14, 2023, the day after the police incident, Plaintiff had a meeting with the Alder Park School principal, Kendall Miller (Causasian).

32. During this meeting, Plaintiff opposed the unlawful race-based treatment, telling Principal Miller than she felt as though she was being discriminated against on the basis of her race, African American.

33. The School District was on-notice of the race-based discrimination and harassment perpetrated against Plaintiff upon her reporting the same to Principal Miller.

34. Instead of investigating Plaintiff's report or taking remedial action to prevent further harm to Plaintiff, Principal Miller informed Plaintiff that, "Well, actually, we don't need you," and informed her to simply remain in the gym and to no longer go into the art room.

35. Surprised at the inaction and nonchalance of the School District, Plaintiff again engaged in protected activity and reported the aforementioned events to Kindercare's Area Manager, Nicole Brady (Causasian).

36. Ms. Brady informed Plaintiff that Kindercare would investigate her claims, but sided with the School District in instructing Plaintiff to just remain in the gym for now.

37. Plaintiff, shocked and disappointed at the continued injustice and inaction by both of her employers, contacted the Human Resources Department ("HR") for the School District.

38. The School District's superintendent, Katy (LNU, Caucasian) empathized with Plaintiff that the hostile and disparate treatment she was enduring was wrong and should not be taking place.

39. As a result of Plaintiff engaging in a protected activity to protect herself against continued race-based discrimination and harassment, on or around September 22, 2023, Plaintiff was invited to a meeting with Principal Miller, Ms. Brady, and Mr. "Pete" (LNU, Caucasian), an HR representative for the School District.

40. The meeting opened with a disingenuous apology from Principal Miller.

41. HR Representative "Pete" followed-up by informing Plaintiff that she was making other teachers uncomfortable, leaving Plaintiff exasperated as *she* was the one that was experiencing race-based harassment and discrimination at the hands of Defendants' employees.

42. HR Representative "Pete" further informed Plaintiff that she would continue to be forbidden to enter the School District's art room and only allowed in the gym.

43. At this point in the meeting, neither Kindercare's Nicole Brady nor any of the School District's employees stood up for Plaintiff; rather, this served as a silent endorsement of perpetuating a work environment which favored Caucasians over African Americans like Plaintiff.

44. After the meeting during which Plaintiff was made to feel like the infracting employee terminated, Plaintiff requested that she be transferred to a different school, resorting to "self-help" her own race-based discrimination in the face of Defendants' collective inaction.

45. Plaintiff's request to transfer was summarily denied.

46. Shortly after the meeting, Plaintiff contacted Kindercare's HR Department was connected with a representative named Satara (LNU).

47. Plaintiff outlined the above facts to HR Rep Satara and expressed displeasure with how Plaintiff's concerns were being addressed.

48. Eventually, HR Rep Satara told Plaintiff that, "You know, that area is very racist. You should know the ins and outs," again alluding to the fact that Plaintiff, an African American, was the problem.

49. Plaintiff could hardly believe that she had been made the aggressor at each turn despite following both Kindercare and the School District's outlined reporting guidelines.

50. Plaintiff responded that regardless, nobody should be subjected to such hostile and racist conduct.

51. In response, HR Rep Satara kicked the proverbial can down the road and informed Plaintiff to contact Kindercare's in-house ethics hotline to get an update on a "pending investigation" into the above-mentioned events.

52. On or around September 25, 2023, Plaintiff was informed that the investigation had concluded and that the results would not be disclosed to Plaintiff.

53. As a result, Plaintiff felt both ostracized and unprotected by her joint employers, Kindercare and the School District.

54. It became apparent that no matter what measures Plaintiff took, that her work environment had become unbearable.

55. Being that her work environment had become so hostile that no reasonable person would be able to continue working in such racist conditions, Plaintiff was forced out of her employment and was constructively discharged.

56. Clearly, Defendants targeted Plaintiff for constructive termination on the basis of her race.

57. Plaintiff can show that she engaged several times in protected activity—a component of her retaliation claim—because she repeatedly reported the race-based discrimination and harassment to Defendants' managerial and human resources staff.

## DAMAGES

58. As a result of Defendant's conduct as set forth herein, Plaintiff suffered adverse employment action in the form of constructive termination.

59. As a result of Defendant's conduct, Plaintiff suffered damages, including: loss of employment, loss of income, loss of employment benefits, mental anguish, emotional distress, decreased self-esteem, financial hardship, and loss of enjoyment of life.

## COUNT I
**Violation of 42 U.S.C. §1981- Against All Defendants**
**(Race-Based Discrimination)**

60. Plaintiff repeats and re-alleges paragraphs 1-59 as if fully stated herein.

61. Section 1977 of the Revised Statutes, 42 U.S.C. §1981, as amended, guarantees persons of all races, colors, and national origin the same right to make and enforce contracts, regardless of race, color, or national origin. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

62. Defendants' conduct against Plaintiff's race amounts to a pattern or practice of systemic race discrimination that constitutes illegal, intentional race discrimination in violation of 42 U.S.C. §1981.

63. Plaintiff was subjected to and harmed by Defendants' systemic and individual discrimination.

64. Defendants' unlawful conduct resulted in considerable harm and adverse employment action to Plaintiff and Plaintiff is therefore entitled to all legal and equitable remedies under §1981.

65. As a direct and proximate result of the race-based discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

### COUNT II
### Violations of Title VII of the Civil Rights Act of 1964—Against All Defendants
### (Race-Based Discrimination)

66. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

67. Title VII prohibits employers from discriminating against employees with respect to her or his compensation, terms, conditions, or privileges of employment, because of her or his race, color, religion, or national origin.

68. By virtue of the conduct alleged herein, Defendants intentionally discriminated against Plaintiff based on her race, African American, in violation of Title VII.

69. As set forth above, Defendants unlawfully discriminated against Plaintiff by permitting the police to be called on Plaintiff on the basis of her race, and then proceeding to characterize Plaintiff as the aggressor when she reported such conduct.

70. Defendants' conduct towards Plaintiff and other African Americans illustrated a willful and/or reckless violation of Title VII.

71. As set forth above, Plaintiff suffered damages as a result of Defendants' race-based discrimination.

## COUNT III
### Violation of Title VII of the Civil Rights Act of 1964- Against All Defendants
### (Race-Based Harassment)

72. Plaintiff repeats and re-alleges paragraphs 1-59 as if fully stated herein.

73. By virtue of the conduct alleged herein, Defendants engaged in unlawful employment practices and subjected Plaintiff to race-based harassment, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

74. Defendants knew or should have known of the harassment.

75. The race-based harassment was severe or pervasive.

76. The race-based harassment was offensive subjectively and objectively.

77. The race-based harassment was unwelcomed.

78. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* due to Plaintiff's race, African American.

79. Defendants acted in willful and/or reckless disregard of Plaintiff's protected

rights.

80. As a direct and proximate result of the race-based harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT IV
**Violations of Title VII of the Civil Rights Act of 1964—Against All Defendants (Retaliation)**

81. Plaintiff repeats and re-alleges all preceding paragraphs as if fully stated herein.

82. During Plaintiff's employment with Defendants, Plaintiff reasonably complained to Defendant about unlawful race discrimination

83. Accordingly, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendants under Title VII.

84. In response to Plaintiff's complaint, Defendants failed to conduct a prompt, thorough, and objective investigation into Plaintiff's allegations of race discrimination.

85. Instead of investigating Plaintiff's claim of unlawful race discrimination, Defendants constructively terminated Plaintiff, as a result of their constant inaction despite Plaintiff's many reports regarding her treatment.

86. Plaintiff has suffered an adverse employment action in retaliation for engaging in protected activity in the form of termination.

87. Defendants' retaliatory conduct toward Plaintiff illustrates a willful and/or reckless violation of Title VII.

88. As set forth above, Plaintiff suffered damages as a result of Defendants' conduct.

**WHEREFORE**, Plaintiff requests the following relief:

a. Judgment in Plaintiff's favor and against Defendants;

b. An award of back pay and benefits;

c. An award of interest on back pay and benefits;

d. An award of front pay and benefits;

e. An award of compensatory damages for emotional distress and pain and suffering;

f. An award of pre-judgment and post-judgment interest;

g. An award of liquidated damages;

h. An award of punitive damages;

i. An award of reasonable attorney's fees and costs; and

j. Any further relief the Court may deem just and equitable.


Dated: September 12, 2024

Respectfully Submitted,

/s/ *Mohammed O. Badwan*
Mohammed O. Badwan, Esq.
Sulaiman Law Group, Ltd.
2500 S. Highland Ave., Ste. 200
Lombard, IL 60148
Phone (630) 575-8180
mbadwan@sulaimanlaw.com
*Counsel for Plaintiff*